**UNITED STATES DEPARTMENT OF THE INTERIOR**
**BUREAU OF LAND MANAGEMENT**
Twin Falls District
Shoshone Field Office
400 West F Street
Shoshone, Idaho 83352
Phone: (208) 732-7200
FAX: (208) 732-7317

**DECISION RECORD**
**for the**
**Wood River Valley Recreation and Access**
**NEPA No. DOI-BLM-ID-T030-2020-0015-EA**

### I. Decision

I have decided to select a combination of Alternatives B, C and D. This combination is also described in the 2020 Wood River Valley Recreation and Access Environmental Assessment (EA) Appendix C, Design Features and Management Plan. Based on my review of the EA and project record, I have concluded that these alternatives were analyzed in sufficient detail to allow me to make an informed decision. I have selected this combination of alternatives based on public comment and minimizing impacts to the natural resources while providing trail-based recreation opportunities. It allows for:

1. Construction, use (according to designation type) and maintenance of 80.7 miles of single-track trail and 0.7 miles of ATV trail, see DR Map Trail Construction.

| Road or Trail Designation Type | Miles |
|---|---|
| ATV (<50" in width) | 0.7 |
| Campsite or Trailhead Road | 1.2 |
| Motorized Single-track (motorcycle) | 21.4 |
| Motorized Class 1 e-bikes | 41.7 |
| Motorized Class 1, 2, & 3 e-bikes | 15.6 |
| Non-Motorized (No e-bikes) | 2.0 |
| **Total** | **82.6** |

2. The table below cross references the road or trail designation type discussed in the EA to its OHV designation per 43 CFR 8340.

| Road or Trail Designation Type | 43 CFR 8340 (OHV Designation) |
|---|---|
| ATV (<50" in width) | Limited to ATV use (OHV Limited) |
| Campsite or Trailhead Road | Limited to seasonal use (OHV Limited) |
| Motorized | Limited to motorcycle use (OHV Limited) |
| Motorized Class 1 e-bikes* | Limited to Class 1 e-bike use (OHV Limited) |
| Motorized Class 1, 2, & 3 e-bikes* | Limited to Class 1, 2, & 3 e-bike use (OHV Limited) |
| Non-Motorized (No e-bikes) | Limited to non-motorized use (OHV Closed) |
| Non-Mechanized | Limited to non-mechanized use (OHV Closed) |
| Reroute | OHV Closed |

* E-bike classifications are as defined in 43 CFR 8340.0-5 (j).

3. Change the following existing trail designations: Croy Creek non-motorized trails to Motorized Class 1, 2, and 3 e-bikes, trail segment in Quigley/Red Devil to Motorized Class 1 e-bike and the Red Devil ridgeline trail to Non-Mechanized, see DR Map Designation Changes.
4. Trail reroutes within Kelly, Wolftone, Ohio and Lees Gulches.  Once the reroute is complete the existing trail will be rehabilitated and no longer be available for motorized use, see DR Map Designation Changes.
5. Construction, use and maintenance of the following trailheads: Slaughterhouse East and West, Colorado Gulch, Townsend Gulch, Lees Gulch, Kelly Gulch and Cove/Driveway Gulch, see DR Map Campsites and Trailheads.
6. Construction, use and maintenance of campsite roads in the following locations: Cove/Driveway, Sharps Canyon, Kelly Gulch, Quigley Gulch and Beaver Creek, see DR Map Campsites and Trailheads.
7. It also allows for annual (January 1 – April 30) OHV seasonal restrictions on 95,629 acres and conditional temporary restrictions (from effect – April 30) on 29, 468 acres, see DR Map Seasonal Restrictions.   Portions of the annual restriction areas may also be further restricted to other uses when conditions warrant.   Conditional temporary restrictions may be implemented when mechanized or human use of public lands is determined to be impacting resources such as wintering wildlife (i.e., deer and elk, sage grouse or raptors). Criteria used to help determine location and restriction types include but are not limited to:
   - Animal location, distribution and volume of human activity,
   - Harsh winter conditions such as extended subzero temperatures, several inches of crusted snow, and/or unusually deep snow conditions,
   - Animal body condition and forage availability.
8. Class 1, 2 and 3 e-bikes will be allowed to use roads and trails within the OHV seasonal restriction areas unless conditional temporary restrictions are implemented to restrict their use, see #7.
9. Authorizes snowmobile grooming and use of specific corridors, see DR Map Seasonal Restrictions.
10. Trails or portions of trails, trailheads and campsites could be closed to all uses between February 1 – August 31st if trails are within a respective buffer of an active raptor nest. See the Design Features and Management Plan for a list of raptors and related buffers.

It is important to note:
1. The BLM will not be constructing trails or related facilities within the Lees Gulch drainage until access to BLM has been resolved and formally documented by Blaine County.   This requires Blaine County to validate and record the Lees Gulch road accessing BLM through private land.
2. The BLM will not be constructing trails that cross Idaho Department of Lands until an easement has been established.

This decision allows the BLM SFO to expand trail-based recreation and camping opportunities within the Wood River Valley while minimizing impacts to natural and cultural resources. These actions were designed primarily to react to visitor health and safety, use and user conflicts and recreational impacts on natural and cultural resources. However, they will also help produce numerous personal, social, economic and environmental benefits.   These benefits will be realized by cooperatively implementing these actions with the WRV communities and local governments. Lastly, it supports BLM's mission; to sustain the health, diversity, and productivity of public lands for the use and enjoyment of present and future generations.

My decision is in conformance with the 1981 Sun Valley Management Framework Plan (MFP) and the 2015 Idaho and Southwestern Montana Greater Sage-Grouse Approved Resource Management Plan Amendment. The MFP states "This unit will be managed to protect the watershed resources, wildlife habitat, open space, and scenic values. However, continued livestock grazing, timber harvesting, recreational activities and mineral development will be encouraged as long as the proposed uses do not significantly reduce the other values."

My decision also complies with:
- Endangered Species Act (ESA) and Section 7 consultation procedures,
- 33 USC § 1251 et seq. (1972) – The Clean Water Act
- Secretarial Orders 3376-Increasing recreational opportunities through the use of electric bikes, 3362-Improving habitat quality in western big-game winter range and migration corridors, 3366-Increasing recreational opportunities on lands and waters managed by the U.S. Department of the Interior, 3356-Hunting, fishing, recreational shooting and wildlife conservation opportunities and coordination with states, tribes and territories, 3347-Conservation stewardship and outdoor recreation and 3310-Protecting wilderness characteristics on lands managed by the BLM.
- 43 CFR 8340: Off-Road Vehicles, Subparts 8340-8342.3
- 43 CFR 8364.1: Closures and Restrictions
- BLM National Environmental Policy Act Handbook (H-1790-1)
- 1626 – Travel and Transportation Management Manual (Public) (MS 1626)
- H-8342 Travel and Transportation Handbook (Public)
- BLM 6840 and 6500 Manual Directives- provides guidance for managing BLM sensitive and priority management species (e.g. big game and plants).

## II. Finding of No Significant Impact

I have reviewed the direct, indirect, and cumulative effects of the proposed activities documented in the EA for the Wood River Valley Recreation and Access EA. I have also reviewed the Finding of No Significant Impact (FONSI) and the project record for this analysis. I have determined that a combination of Alternatives B, C and D to expand trail-based recreation and camping opportunities within the Wood River Valley while minimizing impacts to natural and cultural resources as described in the EA will not significantly affect the quality of the human environment. Accordingly, I have determined that the preparation of an Environmental Impact Statement is not necessary.

## III. Other Alternatives Considered

The full range of alternatives considered can be found in section 2.2 in the EA. The decision combined components of Alternatives B, C and D to balance providing recreation opportunities while minimizing impacts to natural and cultural resources. The Code of Federal Regulation, 43 CFR 8342.1 states: A. Areas and trails shall be located to minimize damage to soil, watershed, vegetation, air, or other resources of the public lands, and to prevent impairment of wilderness suitability and B. Areas and trails shall be located to minimize harassment of wildlife or significant disruption of wildlife habitats. Special attention will be given to protect endangered or threatened species and
their habitats. For a more detailed list of specific trails, campsites and restriction areas that were or were not selected see section IV Public Involvement in the EA.

Providing trails, trailheads and campsites impacts natural resources. Therefore, it was important

to determine how that could be achieved while minimizing impacts.   Impacts cannot be eliminated but they can be minimized.   It was important to protect wildlife, including managed species such as deer and elk, during the months they are most susceptible to disturbance, January - April.   Establishing annual and conditional temporary restrictions accomplishes that.

## IV. Public Involvement

The Draft Wood River Valley Recreation and Access Environmental Assessment was posted to BLMs ePlanning website and available for public review from July 22 – August 21, 2020. A press release was sent to the Twin Falls District distribution list of about 40 outlets including KMVT, KTVB, KBOI, area radio stations and the Times-News, Idaho Statesman, Idaho Mountain Express, Idaho Press Tribune and Owyhee Avalanche. The BLM Twin Falls District congressional representatives and former Resource Advisory Council members also received a copy. An email was sent to 252 individuals who expressed interest in previous travel planning-related planning efforts.   Letters were also mailed to the BLM SFO interested parties list.

Presentations were given to the 5B Restoration Coalition on 7/30/20, Blaine County Recreation District on 8/3/20, Blaine County Commissioners on 8/4/20, and City of Bellevue and Hailey on 8/10/20.

There were 177 comments received by email, letters and through the BLM ePlanning website. Common comment themes and responses include:

1. Access to private property. Response: All conditional restriction discussions will involve IDFG and surrounding jurisdictions, i.e. County and/or cities. If a conditional restriction goes into effect, all motorized vehicles and potentially other modes of transportation would be prohibited to protect deer and elk.   This could result in limiting access to private in-holdings. However, depending on where animals are located, the road could be excluded from the restriction to retain access to private lands.   If a private landowner is interested in guaranteeing year-round access to their private land they can apply for a BLM right-of-way. All existing BLM right-of-way holders are exempt from the seasonal restrictions.

2. Designate the trails to include motorcycles.   Response: To remain consistent with county and city plans, the BLM made an effort to locate motorized trails and trailheads away from the urban interface.   While the WRV trail users have a long history of getting along, it was important to provide trail opportunities as close as possible to residents, which meant trails originating within the urban interface where noise from motorized vehicles would impact surrounding neighboring residents. Primary access to the motorized trail system is limited to Townsend Gulch, Kelly Gulch and Croy Canyon which minimizes impacts to residential areas.   While many of the single-track trail users throughout the WRV appreciate the local motorcycle communities contributions to the spring maintenance burden by clearing downed trees with chainsaws, this type of maintenance will not be necessary as much of the BLM trail network occurs in grass and shrub vegetation types.   Motorized use is still allowed on all existing roads and trails not otherwise designated through this process.   With the exception to seasonal restrictions to minimize impacts to wildlife, this EA only increases public land access and trail-based recreation opportunities.

3. Public safety on trails.   Response: There is an inherent risk taken when using trails on public lands and not all safety issues can be totally mitigated. However, they will be addressed, to the extent practical, through trail design and outreach/education.   There is a long history of good relationships between all user types in the WRV and minimizing conflicts between user groups through outreach and education.

4. The BLM should retain the seasonal restriction between Townsend and Colorado Gulches to minimize impacts to wildlife.   Response: The area between Colorado Gulch and Townsend Gulch will retain its seasonal motorized use restriction but the dates would change to January 1 - April 30th for the purposes of minimizing impacts to deer and elk. While non-motorized winter recreation will be allowed, consistent with the spirit of the motorized use restriction, the BLM would not promote these activities by plowing the road to the Lees Gulch trailhead and/or managing the area for winter non-motorized recreation opportunities.

5. Designate all trails in Lees Gulch as non-motorized to retain the quiet use currently associated with that area.  Response:  The decision designates new trails from the Lees Gulch Trailhead for class 1, 2 and 3 e-bikes and other mechanized (quiet) uses. The motorized single track trail connection from Townsend to Colorado Gulch provides connectivity from Bellevue to the existing and proposed motorized single track trail network in Croy Creek. This trail will only be accessible from Townsend Gulch and Colorado Gulch, and will not provide a motorized loop trail but rather a one-way connection.  The portion of the trail in Lees Gulch would be approximately 2.6 miles long at the end of the drainage and over 2 miles from the residents at the mouth of Lees Gulch.  Therefore, it is anticipated that motorized use patterns will be infrequent, short term in duration and sufficiently distant from residential areas as to minimize concerns.

6. Do not construct campsites proposed in Lees Gulch drainage because of fire danger and proximity to homes. Response:   The proposed campsites at the mouth of Lees Gulch were excluded from the final decision to discourage urban interface camping and noise on BLM in the urban interface.

7. Impacts to wildlife.  Response: Providing trails, trailheads and campsites impacts natural resources, therefore it was important to determine how that could be achieved while minimizing impacts.  Impacts cannot be eliminated but they can be minimized.  It was important to protect wildlife, managed species such as deer and elk, during the months they are most susceptible to disturbance, January - April.  Establishing annual and conditional temporary restrictions accomplish that.

8. Incorporate the Patterson Peak trail and other trails in Alternative B into the final decision. Response: To provide a connection between Quigley and Slaughterhouse canyons while minimizing, to the extent practical, impacts to lands inventoried with wilderness characteristics, the Patterson Peak trail was not selected. The public can continue to use the existing Patterson Peak ridgeline trail for a "peak bagging" experience however the BLM would not designate, nor promote this trail on BLM/partner websites or social media.  This decision allows the BLM SFO to expand trail-based recreation and camping opportunities within the Wood River Valley while minimizing impacts to natural and cultural resources. These actions were designed primarily to react to visitor health and safety, use and user conflicts and recreational impacts on natural and cultural resources.  These actions will also help produce numerous personal, social, economic and environmental benefits.  The BLM is required to review all roads and trails, and minimize impacts to soil, watershed, vegetation, air, or other resources of the public lands, and to prevent impairment of wilderness suitability, and locate them to minimize harassment of wildlife or significant disruption of wildlife habitats. Special attention will be given to protect endangered or threatened species and their habitats.   Therefore, not all trails were incorporated into the decision so BLM could best provide recreation opportunities while minimizing to the extent practical impacts to natural

and cultural resources.

9. Include the trail proposed in Colorado Gulch that runs parallel to the road. Response: The sightlines along the road are good and based on unknown safety issues and future uses of this road, the trail mirroring the Colorado Gulch road was not selected.

10. Threat of increased human-caused fires from trail users and campers. Response: Increased access and use of public lands, regardless of their mode of transportation, will increase the potential for human and/or vehicle related fire starts. Campsites will be designed, constructed and maintained (including agency approved metal fire rings) to minimize the chances of escaped campfires. Information and educational material would be posted at trailheads and campsites to help educate recreationists about wildfire levels, fire prevention and fire restrictions when applicable. The final decision limits development of new camp sites to areas well away from residential areas (Cove Creek, Quigley Gulch, Kelly Creek a, Beaver Creek and Sharps Canyon).

11. Loss of access. Response: Idaho Department of Parks and Recreation 2018-2022 Statewide Comprehensive Outdoor Recreation Plan defines access as, "Access refers to the overall availability of a recreational opportunity. Idaho must continue to provide access to opportunities for its citizens and visitors, ensuring that public lands and parks remain open to a variety of recreational uses throughout the state. There are many challenges in meeting this task, including funding for maintaining and developing facilities, adapting to trends and changes in activities and balancing access with conservation of resources". This EA considers multiple trail-based recreational uses, i.e., trail designations and their related impacts. With the exception to seasonal restrictions to minimize impacts to wildlife, conservation of resources, all BLM lands remain open and available to use by foot and horseback. It also helps with the conservation of resources by not developing trails in two units that have been found to contain lands with wilderness character. Access in these units remain available for off-trail hiking and equestrian users. The decision does not decrease road-based recreation opportunities and access for UTVs and other full-sized motor vehicles greater than 50" in width, but it does increase trail-based access for ATVs, motorcycles, e-bikes, mountain bikes, equestrians and hikers.

12. Snowmobile noise adjacent to subdivisions in Croy Creek. Response: Noise from OSV, i.e. snowmobiles, impacting neighborhoods or subdivisions, would be addressed through information and education using Idaho Department of Parks and Recreation's Snowmobiling in Idaho Publication; specifically the Safe Travel and Ethics section.

13. Recommend that all proposed trails within the Patterson Peak lands with wilderness character inventory unit be changed in their classification from Class 1 e-bike accessible to non-motorized. This adjustment will help minimize the impacts to the characteristics associated with this area and provide for a higher quality experience for non-motorized users in this area. Response: Impacts to areas inventoried for lands with wilderness characteristics qualities and conditions will be very similar between e-bikes and traditional mountain bikes. Based on this data there is no sound rationale for them to be excluded from these areas. Also, Idaho law requires e-bikes be posted as to what class, watts and speed therefore the rider will know the type of bike they own and the trails will be designated and marked according to the type of bike allowed. This along with other general outreach and education

efforts e-bike users will be aware of which trails are available for them to use.

14. E-bikes are not identical in terms of their potential impacts to wildlife. E-bikes allow trail users to go further distances than traditional non-motorized uses because of the electric motor.  Response: The e-bike trails in the Patterson Peak area, Red Devil and Colorado/Townsend gulch areas would be considered a closed loop, meaning users start and finish at trailheads within the urban interface areas of Bellevue and Hailey.  Therefore, they would not be traveling beyond those trails unless they used existing roads to travel further into the "back country" on roads that are currently open to all use types.

15. Do not construct campsites proposed in Slaughterhouse drainage because they are immediately adjacent to an approved subdivision.  Response:  These campsites were not included in the Decision Record per the request of the City of Bellevue City Council members and Mayor and Blaine County Commissioners and to minimize user conflicts between campers and future homeowners.

**V. Appeals**

This decision may be appealed to the Interior Board of Land Appeals (IBLA), Office of the Secretary, in accordance with the regulations contained in 43 CFR Part 4.  Any appeal must be filed within 30 days of this decision.  Any notice of appeal must be filed with Codie Martin, Shoshone Field Manager, 400 West F Street, Shoshone, ID. 83352.  The appellant shall serve a copy of the notice of appeal and any statement of reasons, written arguments, or briefs on each adverse party named in the decision, not later than 15 days after filing such document (see 43 CFR 4.413(a)).  Failure to serve within the time required will subject the appeal to summary dismissal (see 43 CFR 4.413(b)).  If a statement of reasons for the appeal is not included with the notice, it must be filed with the IBLA, Office of Hearings and Appeals, U. S. Department of the Interior, 801 North Quincy St., Suite 300, Arlington, VA   22203 within 30 days after the notice of appeal is filed with Codie Martin, Shoshone Field Manager.

Notwithstanding the provisions of 43 CFR 4.21(a)(1), filing a notice of appeal under 43 CFR Part 4 does not automatically suspend the effect of the decision.  If you wish to file a petition for a stay of the effectiveness of this decision during the time that your appeal is being reviewed by the Board, the petition for a stay must accompany your notice of appeal.

A petition for a stay is required to show sufficient justification based on the following standards:

(1)  The relative harm to the parties if the stay is granted or denied;
(2)  The likelihood of the appellant's success on the merits;
(3)  The likelihood of immediate and irreparable harm if the stay is not granted; and
(4)  Whether the public interest favors granting the stay.

In the event a request for stay or an appeal is filed, the person/party requesting the stay or filing the appeal must serve a copy of the appeal on the Office of the Field Solicitor, 960 Broadway Ave., Suite 400, Boise, ID   83706.

Codie Martin
Field Manager

2/26/2021
Date